IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01187-CMA-NYW

TRUSTID, INC.,

    Plaintiff,

v.

NEXT CALLER INC.,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND GRANTING PLAINTIFF'S MOTION TO MAINTAIN RESTRICTED ACCESS**

---

This matter is before the court on Plaintiff TRUSTID, Inc.'s ("TRUSTID") Motion for New Trial Under Federal Rule of Civil Procedure 59 (Doc. # 189) and Motion for Leave to Maintain Restricted Access (Doc. # 184). TRUSTID argues that a new trial is warranted because the erroneous admission of parol evidence at trial prejudicially affected the jury's verdict in favor of Defendant, Next Caller, Inc. ("Next Caller"). TRUSTID also requests that the Court maintain the restricted access covering evidence involving TRUSTID's confidential financial information. For the following reasons, the Court denies TRUSTID's Motion for New Trial and grants TRUSTID's request to maintain restricted access.

## I. BACKGROUND

TRUSTID brought suit in April 2019 asserting claims of misappropriation of trade secrets in violation of federal and state law, intentional interference with prospective economic advantage, and breach of contract. (Doc. # 1.) These claims stemmed from a reciprocal Referral Agreement executed by TRUSTID and Next Caller, which are both providers of caller-authentication technology.

The case was tried to a jury for four days from March 22–25, 2021. On March 25, 2021, the jury returned its verdict in favor of Next Caller on all claims. (Doc. # 181.) The Clerk of Court entered final judgment in favor of Next Caller and against TRUSTID on the same day. (Doc. # 183.) On April 22, 2021, TRUSTID moved for a new trial under Federal Rule of Civil Procedure 59. (Doc. # 189.)

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 59(a)(1)(A), the Court may, "on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A motion for a new trial "is not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991). A new trial should be granted only "to correct manifest errors of law or to present newly discovered evidence." *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1274–75 (10th Cir. 2005)). The decision whether to grant a new trial is committed to the sound discretion of the trial court. *Kelley*, 929 F.2d at 586. The trial court judge "has the obligation or duty to ensure

that justice is done, and, when justice so requires, [the judge] has the authority to set aside the jury's verdict." *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990).

To "secure a new trial based on an allegedly improper evidentiary ruling, the movant must show both that the court's evidentiary rulings were clearly erroneous and that they were prejudicial such that 'it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *Jackson v. Potter*, 587 F. Supp. 2d 1179, 1182 (D. Colo. 2008) (quoting *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)). Even then, an erroneous evidentiary ruling cannot be grounds for granting a new trial "unless the error or defect affects the substantial rights of the parties." *Stewart v. S. Kan. & Okla. RR., Inc.*, 36 F. Supp. 2d 919, 920 (D. Kan. 1999).

### III.   DISCUSSION

TRUSTID argues that the erroneous admission of parol evidence at trial "infected all aspects of the jury's verdict, prejudicially impacting TRUSTID's substantial rights." (Doc. # 189 at 1.) TRUSTID's argument is based on two exhibits entered at trial: Exhibits 127 and 129. (*Id.* at 2.) These exhibits are relevant primarily to TRUSTID's breach of contract claim.

The parties have agreed that Oregon law governs all state law claims involved in this action. (Doc. # 107 at 8.) The Oregon parol evidence rule states:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the

> contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term "agreements" includes deeds and wills as well as contracts between parties.

Or. Rev. Stat. § 41.740. The Supreme Court of Oregon has held that the statute should be treated "as a codification of the common law parol evidence rule" and has disavowed "a literal reading of [the statute that] would 'exclude **any** parol evidence of the terms of an agreement once that agreement has been reduced to writing by the parties.'" *Abercrombie v. Hayden Corp.*, 883 P.2d 845, 849 (Or. 1994) (quoting *Hatley v. Stafford*, 588 P.2d 603, 605 n.1 (Or. 1978)). "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting." Or. Rev. Stat. § 42.220. If a written agreement is "completely integrated," it supersedes all written or oral agreements made before the written agreement "to the extent that the prior agreements are within the scope of the completely integrated agreement." *Abercrombie*, 883 P.2d at 850. Similarly, the parol evidence rule provides that prior written or oral agreements made before a partially integrated agreement are inadmissible "to the extent that the prior agreements are inconsistent with the partially integrated agreement." *Id.* A prior agreement is "inconsistent" with a written agreement if it contradicts or negates an express term in the writing. *Id.* at 851.

4

The exhibits at issue, 127 and 129, are copies of the same email chain showing correspondence between TRUSTID and Next Caller prior to the parties' execution of the Referral Agreement. (Doc. # 171 at 2; Doc. # 172 at 2–3.) The emails show that TRUSTID proposed that the Agreement include a non-competition provision. Next Caller's representative wrote, "While I understand the nuances that do not make us direct competitors, I think we are similar enough that we are not comfortable signing off on that language." TRUSTID responded, "We agree it makes sense to the remove the 'we will not compete' language."

Before trial, TRUSTID filed a brief objecting to the admission into evidence of Exhibits 127 and 129, and other exhibits containing the same emails, on the basis that they violated the parol evidence rule. (Doc. # 171.) Next Caller filed a response brief in opposition the exclusion of these exhibits. (Doc. # 172.)

At trial, TRUSTID called its CEO, Patrick Cox, to testify. When asked if Mr. Cox regarded Next Caller as a competitor in 2014, Mr. Cox responded "No. I think we mutually agreed we didn't." (Doc. # 196 at 83.) Counsel for TRUSTID also asked Mr. Cox, "[In] the lead up to the execution of the referral agreement, what representations did [Next Caller's representatives] make to you about the nature of their product offering?" (*Id.* at 89.) Mr. Cox testified that it was his belief the two companies were offering different products. (*Id.*) He later testified he did not realize that Next Caller was "fully competing with us" and was "truly a competitor" until after the Referral Agreement had been executed. (*Id.* at 100–01.)

On cross-examination, Next Caller offered the email chain into evidence to rebut Mr. Cox's testimony that he did not think TRUSTID and Next Caller were competitors prior to the execution of the referral agreement. (*Id.* at 148–49.) TRUSTID objected on the basis that the email chain was parol evidence. (*Id.* at 148.) Next Caller maintained that it was not offering the email chain "to alter any term in the agreement" because "there is no non-competition agreement." (*Id.* at 150.) Instead, Next Caller argued the email chain was intended to rebut Mr. Cox's testimony that he did not believe the companies were competitors prior to executing the Referral Agreement. (*Id.*) The Court overruled TRUSTID's objection and allowed the email chain into evidence. (*Id.*)

TRUSTID now argues that the admission of the challenged exhibits violated the parol evidence rule and tainted the jury's verdict. (Doc. # 189 at 5.) TRUSTID asserts that the Referral Agreement was fully integrated and unambiguous and that Next Caller offered the challenged exhibits to modify the terms relating to Next Caller's obligations under the contract. (*Id.* at 6–7.) Regarding prejudice, TRUSTID asserts that the challenged exhibits "were critical to Next Caller's entire defense" that the two companies never agreed not to directly compete with each other. (*Id.* at 10.) TRUSTID argues that without these exhibits, the only reasonable reading of the Referral Agreement would have been that any competition by Next Caller for the same business was a breach of that agreement. (*Id.* at 11.)

In response, Next Caller asserts that the exhibits were properly admitted and did not violate the parol evidence rule. In Next Caller's view, the email chain was not offered to modify the Referral Agreement because the Agreement did not contain any non-

6

competition provision. (Doc. # 194 at 6.) Further, Next Caller asserts that the absence of the exhibits at trial would not have changed the jury's verdict because other evidence—including the Referral Agreement itself—supported Next Caller's theory that the companies never agreed not to compete. (*Id.* at 12–13.)

The Court finds that its ruling admitting the challenged exhibits was not clearly erroneous. The email chain within the challenged exhibits demonstrates that the parties discussed whether to include a non-competition clause in the Referral Agreement and decided against it. There is no non-competition clause in the Referral Agreement, so evidence of the email chain does not contradict or negate an express term in the Agreement and, therefore, is not "inconsistent" with it. *See Abercrombie*, 883 P.2d at 851. The parol evidence rule does not apply because Next Caller was not attempting to use the emails to modify any terms of the agreement. Moreover, TRUSTID elicited testimony from its CEO, Mr. Cox, about his understanding of whether the parties intended to be competitors prior to executing the Referral Agreement. TRUSTID cannot offer evidence about its own intent regarding non-competition prior to the Referral Agreement and also object to Next Caller offering evidence to rebut that intent.

The Court is not persuaded by TRUSTID's argument that a reasonable reading of the "commercially reasonable efforts" provision of the Referral Agreement encompasses a non-competition understanding and thereby bars evidence of a prior agreement relating to non-competition. *See* (Doc. # 189 at 6.) The relevant provision states that each party "shall use all commercially reasonable efforts" to refer customers to each other. It says nothing about competition, and there is no non-competition

7

provision in the Agreement. Even if the Court were to agree with TRUSTID that the "commercially reasonable efforts" provision raises the question of whether competition was allowed under the Agreement, the provision would then at best be ambiguous and evidence of the email chain would be admissible in order to clarify that term of the Agreement. *See Abercrombie*, 883 P.2d at 853 ("The parol evidence rule does not prohibit a party from introducing evidence extrinsic to a writing to explain an ambiguity in the writing, even when the writing is a completely integrated agreement.").

Accordingly, the Court finds that TRUSTID has not met its burden of showing that the admission of Exhibits 127 and 129 was clearly erroneous and requires a new trial.

Further, the Court finds that TRUSTID has failed to show that the challenged exhibits were so prejudicial that a contrary result would have been reached at trial had the exhibits been excluded. TRUSTID argues that Exhibits 127 and 129 were "critical" to Next Caller's defense that the Referral Agreement was not a non-compete and that, therefore, Next Caller did not breach the Agreement by competing with TRUSTID for the same business. (Doc. # 189 at 10.) TRUSTID also argues that the challenged exhibits tainted the jury's verdict on the misappropriation of trade secrets and intentional interference claims because without that email chain, the jury would have no basis to conclude that the Agreement allowed for direct competition. (*Id.* at 11–12.)

The Court disagrees with TRUSTID that the jury would have had no basis to conclude that the parties were allowed to compete without the challenged exhibits. The absence of a non-competition provision in the Referral Agreement provided a sufficient basis for the jury to conclude that the companies were allowed to compete. Next Caller

would have been able to assert the same theory of defense on the plaint text of the Agreement. Moreover, Next Caller presented testimony from its CEO, Ian Roncoroni, that Next Caller's caller authentication technology always had similar capabilities as TRUSTID's technology. (Doc. # 198 at 308.) Next Caller also provided testimony from Mr. Roncoroni that he believed the two companies were competitors and that referral agreements between competitors can make sense for both companies. (*Id.* at 338, 339.) A reasonable jury could have credited Next Caller's CEO's testimony over TRUSTID's CEO's testimony to determine that the parties never agreed not to compete, even without the challenged exhibits.

Accordingly, the Court finds that TRUSTID has failed to show that the admission of Exhibits 127 and 129 was so prejudicial that without the challenged exhibits, there would have been a contrary result. Therefore, TRUSTID has not met its burden to show that a new trial should be granted under Federal Rule of Civil Procedure 59.

## IV.     MOTION FOR LEAVE TO MAINTAIN RESTRICTED ACCESS

"All courts have supervisory powers over their own records and files. Thus a court, in its discretion, may seal documents if the public's right of access is outweighed by competing interests." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (internal citations and quotation marks omitted). At the same time, there is a well-established presumption against restricting access to court documents. *See, e.g.*, *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511 (10th Cir. 1994) ("[The right of access to court documents] is an important aspect of the overriding concern with preserving the integrity of . . . judicial processes." (internal quotation marks omitted).

To this end, Local Civil Rule 7.2(a) provides that documents filed with this District are presumptively available to the public, and the burden is on the party seeking restriction to justify such relief. D.C.COLO.LCivR 7.2(a) ("Unless restricted by statute, rule of civil procedure, or court order, the public shall have access to all documents filed with the court and all court proceedings."); *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) ("The party seeking to overcome the presumption [of access] bears the burden of showing some significant interest that outweighs the presumption." (citation and internal quotation marks omitted)). Local Rule 7.2(c) requires that the party seeking to restrict access (1) identify the specific document or proceeding for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a "clearly defined and serious injury" that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate or practicable. D.C.COLO.LCivR 7.2(c).

Prior to trial, TRUSTID moved to restrict public access to certain exhibits and trial testimony on the basis that they would include TRUSTID's "trade secrets and confidential financial data." (Doc. # 174 at 2.) The Court granted a Level 1 restriction to the extent the testimony included TRUSTID's alleged trade secrets and confidential financial information. (Doc. # 196 at 12.)

In the instant motion, TRUSTID moves to maintain Level 1 restricted access to portions of the trial transcript that cover TRUSTID's confidential return on investment

("ROI") analysis and pricing structure. (Doc. # 184 at 2.) Next Caller opposes the restriction.

The Court has reviewed the Motion, the objection thereto, and all relevant portions of the trial transcript. The Court agrees with TRUSTID that maintaining a Level 1 restriction is appropriate for the portions of the transcript designated in TRUSTID's Motion for Leave to Maintain Restricted Access (Doc. # 184 at 2). The Court finds that TRUSTID's proposed partial restriction applies only to those portions of the trial transcript that include discussions of TRUSTID's ROI tool, confidential pricing structure, and other financial data that TRUSTID has an interest in in protecting in order to preserve its ability to compete in the marketplace. Accordingly, the Court finds that TRUSTID has met its burden under Local Rule 7.2 to restrict those portions of the trial transcript. *See* D.C.COLO.LCivR 7.2(c).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for New Trial Under Federal Rule of Civil Procedure 59 (Doc. # 189) is DENIED.

It is FURTHER ORDERED that Plaintiff's Motion for Leave to Maintain Restricted Access (Doc. # 184) is GRANTED.

DATED: November 18, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge